UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BERNICE W.,[1]   Case No. 1:22-cv-206

    Plaintiff,   Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review.[2] As explained below, the Court will AFFIRM the ALJ's finding of non-disability, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On December 29, 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on September 18, 2015[3] due to a combination of physical impairments including rheumatoid arthritis, osteoarthritis, fibromyalgia, Ehlers-Danloe syndrome, scoliosis, spondylosis, macular degeneration, migraines, hypokalemia, mixed hyperlipidemia, pericarditis, carotid artery stenosis, fatty

---

[1]Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.
[3]Plaintiff engaged in part-time work in 2016 and 2017 after her alleged onset date, but her earnings during that period fell below the threshold for substantial gainful activity. (Tr. 45, 18-19).

1

liver disease, and irritable bowel syndrome, and mental impairments of depression and anxiety. (Tr 48, 49). When her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On March 23, 2021, Plaintiff appeared telephonically with her attorney and gave testimony before ALJ Kevin Barnes; a vocational expert also testified. (Tr. 38-72).

Plaintiff was 59 years old on the alleged disability onset date, in the "advanced age" category. She changed age categories to "closely approaching retirement age" and was 63 years old on June 30, 2020, her date last insured ("DLI").[4] (Tr. 18, 92). She has a high school degree and "some college." (Tr. 44). She had married prior to the evidentiary hearing and testified that she lives with her husband. She has past relevant work as a bookkeeper and as a warehouse supervisor. (Tr. 45-46).

On May 11, 2021, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 15-30). The ALJ determined that Plaintiff has severe impairments of degenerative joint disease, residuals of right hip arthroplasty, Ehlers-Danlos syndrome, degenerative disc disease of the cervical and lumbar spine, but found "no evidence of any other physical impairment that is 'severe.'" (Tr. 19). Considering all of Plaintiff's severe and nonsevere impairments, the ALJ determined that none, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 23).

---

[4]Although Plaintiff reached the age of 64 nearly a year before the ALJ's decision, her age as of her DLI is more relevant because she must establish that she was disabled prior to the expiration of her insured status.

2

The ALJ further determined that Plaintiff retained a Residual Functional Capacity ("RFC") that permits her to perform a range of sedentary work, subject to the following additional limitations:

> She could not climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs. The claimant could occasionally balance, stoop, crouch, kneel, and crawl. She could frequently reach, fully extended, bilaterally. She could frequently reach overhead bilaterally. She could frequently handle and finger bilaterally. The claimant should have avoided hazardous machinery and unprotected heights.

(Tr. 24).

Based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, the ALJ determined that Plaintiff could continue to perform her past relevant work as a bookkeeper. (Tr. 29). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 30). The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In this appeal, Plaintiff argues that the ALJ erred: (1) when he rejected the RFC opinions of Dr. Siegel, an examining consultant; (2) when he categorized three of Plaintiff's impairments as nonsevere; and (3) when he determined that Plaintiff remained capable of fulltime work. I find no reversible error.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims of Error

Plaintiff argues that the ALJ erred in failing to find three impairments to be severe at Step 2: her visual impairment, her migraines, and/or her heart disease. She further asserts that the ALJ erred when he rejected the RFC opinions of an examining consulting physician, Dr. Bruce Siegel, who first examined Plaintiff *after* her DLI. Last, she argues that the ALJ erred when he rejected her allegation that she would miss too many days to be able to maintain full-time work.

#### 1. Substantial Evidence Supports the ALJ's Step 2 Finding

Plaintiff alleges disability based upon a long list of both physical and mental impairments. At Step 2 of the sequential analysis, the ALJ determined that only four impairments were "severe." The ALJ found that eleven alleged impairments, including headaches, macular degeneration, heart palpitations, pulmonary disease, fibromyalgia, hyperlipidemia, hypotension, hepatitis C, gastrointestinal issues, and depression and anxiety were "nonsevere," meaning they did not "significantly limit" her ability to do basic work activities. *See* 20 C.F.R. § 404.1522; *see also* SSR 85-28, 1985 WL 56856, at *3

5

(Jan. 1, 1985) (explaining that an impairment is not "severe" if it "has no more than a minimal effect on [Plaintiff's] physical or mental ability(ies) to perform basic work activities."). In this appeal, Plaintiff challenges the ALJ's Step 2 analysis with respect to three alleged impairments: vision deficits, headaches, and cardiac impairments.

The Court finds no reversible error in the ALJ's Step 2 determination that the three referenced impairments were "nonsevere." When an ALJ determines that at least some impairments were severe at Step 2, and considers all of Plaintiff's severe and nonsevere impairments as he progresses through the remainder of the sequential analysis as the ALJ did in this case, a claim of error at Step 2 "[does] not constitute reversible error." *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). That is because the severity inquiry at the second step of the sequential evaluation process does no "'more than allow the [Commissioner] to deny benefits summarily to those applicants with impairments of a minimal nature that could never prevent a person from working.'" SSR 85-28 at *2 (internal quotation marks and citation omitted).

Plaintiff retained the burden at Step 2 to show that her alleged visual deficits, headaches, and/or cardiac impairments had more than a minimal effect on her ability to work. The existence of some evidence in Plaintiff's favor does not negate the substantial evidence that supports the ALJ's Step 2 findings. *See Longworth v. Comm'r of Soc. Sec*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."). And again, the ALJ's recognition of other severe impairments renders harmless any possible error. *See Mariarz, supra; Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). Nevertheless, the

6

Court briefly summarizes the substantial evidence that supports the ALJ's Step 2 analysis that Plaintiff's visual impairments, headaches, and cardiac issues were nonsevere.

### a. Plaintiff's Visual Impairment

Although framed as a Step 2 error, Plaintiff's argument concerning her alleged visual impairment significantly overlaps with her broader argument that the ALJ erred when he concluded she can perform her prior relevant work as a bookkeeper. However, even if the ALJ had determined that Plaintiff's macular degeneration was a "severe" impairment at Step 2, that does not preclude a subsequent determination at Step 4 that her visual impairment did not impact her functional capacity to perform work at Step 4. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007) (explaining that a finding that an impairment is "severe" at step 2 of the sequential analysis does not preclude a subsequent determination at step 4 that the same limitation has "little effect" on the claimant's ability to work).

In any event, the record reflects that Plaintiff was diagnosed with age-related dry macular degeneration in 2011, approximately four years prior to her alleged onset of disability. (Tr. 332-350). At the time, she worked full-time as a bookkeeper. Much of the evidence concerning Plaintiff's visual impairment was provided by her testimony. Plaintiff admitted that her vision is correctable, that she has no difficulty driving, and reported she uses her I-pad to play videogames. (*See* Tr. 28). However, she testified that soon after her diagnosis, she advised her supervisor that she wanted to resign her bookkeeper position because she had "started having vision problems" that led her to "mak[e] mistakes." (Tr. 46, 49). She explained that her vision became "blurry in spots" the longer that she tried to focus on her computer screen, and she would have to "go back through and try to read everything again just to figure where my mistakes [were]," which was

7

causing her "extra work…because of my own issues." (Tr. 50; *see also* Tr. 51). She testified that in addition to blurred vision, prolonged computer or close reading work increased her headaches. (Tr. 53). When Plaintiff advised her supervisor that she wanted to resign from her bookkeeper job,[5] the supervisor offered her a different fulltime position as a warehouse supervisor. (Tr. 46-47).

Citing her diagnosis and job history, along with the fact that two state agency physicians listed her vision impairment as a "severe" impairment, Plaintiff maintains that the ALJ erred in finding her visual impairment to be nonsevere. However, the fact that some evidence exists to support a different conclusion than that reached by the ALJ at Step 2 does not require remand so long as substantial evidence also exists to support the ALJ's finding. This Court cannot reweigh conflicting evidence. *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989). Here, substantial evidence supports the ALJ's conclusion that Plaintiff's vision impairment was nonsevere.

First, the ALJ discounted Plaintiff's subjective statements concerning the limiting effects of her symptoms, including but not limited to her alleged visual impairment, as "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 25). An ALJ's evaluation of subjective symptoms must be substantially supported by the record, but is entitled to such "great weight and deference" that some courts have described it as "virtually unchallengeable." *See Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 508, 511 (6th Cir. 2013) (internal quotation marks and additional citation omitted); *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005). Plaintiff here

---

[5]Plaintiff testified that she voluntarily advised the company of her vision problem; there is nothing in the record to suggest that the company noticed any increase in Plaintiff's error rate or asked her to resign. (Tr. 52).

8

does not directly challenge the ALJ's adverse consistency/credibility finding concerning her subjectively reported symptoms, which finding is entitled to great deference.[6]

Second, Plaintiff's heavy reliance on the fact of her diagnosis of macular degeneration years prior to her alleged onset of disability is misplaced. She argues that the condition is "usually progressive," and asserts that "20/20 vision at one moment…does not account for blurry vision that may occur throughout the day," and that [e]ven infrequent episodes of blurriness… could impact the precise work of a bookkeeper." (Doc. 11 at 5-6). But Plaintiff offers no evidence that her macular degeneration has actually progressed, and her speculative argument does not overcome the substantial evidence on which the ALJ relied. The ALJ cited to evidence from Plaintiff's treating optometrist that her vision was correctable to 20/20 in both eyes during the disability period. (Tr. 519, 528, 536, 544). In fact, three years after Plaintiff's alleged disability onset date, in September 2018, a treating optometrist opined that Plaintiff's "vision was not affecting [her] ability to work in any capacity." (Tr. 521 (emphasis added)). And, despite their inclusion of Plaintiff's visual impairment on a list of severe impairments, both of the agency reviewing physicians explicitly opined that Plaintiff does not have any work-related visual limitations. (Tr. 87, 104). Thus, the ALJ's Step 2 finding that Plaintiff's macular degeneration was nonsevere is substantially supported.

---

[6]SSR 16-3p refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The elimination of the term "credibility" can be semantically awkward since the prior case law uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. *See Duty v. Comm'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

### b. Plaintiff's Headaches

The conclusion that Plaintiff's headaches were not severe also is supported by the absence of evidence that Plaintiff had work-related limitations relating to headaches. The ALJ correctly pointed out that complaints of migraine headaches were noted in the medical record, but only "sporadically and not very frequently." (Tr. 20 citing Tr. 550, 1581, 2052). He further reasoned that Plaintiff's headaches were managed with conservative treatment (Tr. 20 citing Tr. 2290). Plaintiff complains that the ALJ failed to discuss her diagnosis of Chiari malformation and chronic small vessel brain disease, which is known to cause headaches. However, a mere diagnosis does not prove either that an impairment is severe at Step 2 or that it causes limitations at Step 4. *See also, generally*, SSR 19-4p, (offering agency guidance regarding the evaluation of headaches), 2019 WL 4169635 (Aug. 26, 2019).

### c. Plaintiff's Cardiac Impairment

Last, the record supports the ALJ's Step 2 analysis of Plaintiff's cardiac impairments as nonsevere. Plaintiff established care with a cardiologist well before her alleged onset date at a time when she continued to work fulltime. (Tr. 1016, 2052). She reported intermittent symptoms such as palpitations, chest pain and dizziness, but was treated effectively with medications throughout the disability period. Over time, testing revealed largely normal findings. (Tr. 20, citing Tr. 941, 1050, 2156). Plaintiff's own cardiologist described her as being "stable and euvolemic from a cardiac standpoint" (Tr. 898, 901, 905, 908, 911, 914, 917, 983, 2012, 2015). Therefore, it was reasonable for the ALJ to conclude that she did not have a "severe" cardiac impairment that caused more than minimal work-related limitations. *See Eddy v. Comm'r of Soc. Sec*, 506 Fed. Appx.

508, 509 (6th Cir. 2012) (ALJ properly considered that treatment had stabilized or improved a claimant's condition).

### 2. The ALJ's Analysis of Dr. Siegel's Opinions

In her second claim of error, Plaintiff criticizes the ALJ's rejection, at Step 4 of the sequential analysis, of most RFC opinions offered by a consulting physician. Dr. Siegel performed a one-time examination of Plaintiff at counsel's request on February 22, 2021 – nearly eight months *after* her DLI.[7] In addition to Dr. Siegel's opinions, the ALJ reviewed the opinions of two agency consultants. Dr. Venkatachaia reviewed Plaintiff's records at the initial level on October 22, 2018, and Dr. Siddiqui reviewed her records on reconsideration on May 14, 2019. In contrast to the "persuasive" value of the opinions of the agency physicians, the ALJ found most of Dr. Siegel's opinions to be "not persuasive."

Plaintiff argues error based "upon the superior vantage point that Dr. Siegel held as a matter of law" as a one-time examiner who had access to a more complete record than did the agency reviewers. But Plaintiff cites to an older body of case law that reinforced a hierarchical structure in which treating physician opinions were given controlling weight, and examining physicians were to be given more weight than non-examining physicians. *See generally*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Newer and controlling regulations eliminate that presumptive hierarchy. Under current regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

---

[7]Plaintiff's DLI was June 30, 2020, meaning she was required to provide disability prior to that date.

11

Despite the clear language of this revised regulation, Plaintiff suggests that 20 C.F.R. § 404.1520c(c)(v) retains the presumptive distinction between examining and non-examining physician opinions. However, the referenced subpart does not contradict §404.1520c(a) and imposes no presumption whatsoever. Instead, the referenced subsection notes that "examination" is one of many factors to be considered when evaluating medical source opinions. Rather than *requiring* an ALJ to give greater weight to the opinions of a one-time examining physician, the regulation merely invites the ALJ to consider the <u>possibility</u> that "[a] medical source <u>may</u> have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." *Id.* (emphasis added). However, the revised regulation clarifies that an ALJ need not specifically articulate his consideration of the "examination" factor or of any other factor besides the "most important" factors of consistency and supportability. *See* 20 C.F.R. § 404.1520c(b)(2). Under the current regulations, the ALJ's analysis is substantially supported.

The ALJ initially considered Dr. Siegel's opinions at Step 3 of the sequential analysis. Dr. Siegel opined that Plaintiff met or equaled three different Listings, including Section 14.06 (undifferentiated and mixed connective tissue disease) and Sections 1.03 and 1.04. The ALJ rejected those opinions as both unsupported and inconsistent with the record, noting that "[t]he requisite criteria to meet section 14.06 are clearly not present," and that Dr. Siegel had cited to two sections of Listings that "are… obsolete and have been replaced." (Tr. 23). The ALJ considered the pertinent replacement sections of the Listings but quickly concluded that none of the requisite criteria were met. (Tr. 23-24). Plaintiff does not challenge the ALJ's Step 3 findings, including his rejection of Dr. Siegel's

12

opinions. Instead, Plaintiff focuses on the ALJ's rejection of Dr. Siegel's work-preclusive RFC opinions at Step 4 of the sequential analysis.

Relating to her alleged visual impairment, for example, Dr. Siegel alone opined that Plaintiff's macular degeneration adversely impacted Plaintiff's reading ability, which Plaintiff argues would preclude her past work. (*See* Tr. 173). But Dr. Siegel's opinion was inconsistent with the opinions of two other agency consultants who explicitly opined that she does not have any visual limitations. (Tr. 87, 104). Even more critically, it was inconsistent with the opinion of Plaintiff's treating optometrist. Dr. Siegel performed no visual examination or testing, and qualified his opinion by stating that he could not provide information on the degree of limitation because he did not have information from the Cincinnati Eye Institute. (Tr. 173). Although Dr. Siegel apparently relied upon Plaintiff's historic diagnosis of macular degeneration, a mere diagnosis says nothing about the level of functional impairment, if any, during the relevant disability period. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The ALJ therefore reasonably rejected Dr. Siegel's opinion as lacking in consistency and supportability. *Accord Tracy v. Comm'r of Soc. Sec.*, Case No. 1:12-cv-588, 2013 WL 3287113, at *10-11 (S.D. Ohio 2013) (substantial evidence supported ALJ's decision not to include visual limitation in RFC despite plaintiff's testimony of blind spots from macular degeneration, where treating eye doctor noted 20/20 visual acuity).

The ALJ also adequately articulated his reasons for finding most of Dr. Siegel's remaining opinions to be unpersuasive. First, the ALJ accurately summarized those opinions:

> Bruce Siegel, D.O., examined the claimant in February 2021 at the request of claimant's counsel (Exhibits 27F and 28F). According to Dr. Siegel, the claimant "suffers with several system failures and requires medication and dietary treatment for cholesterol, diabetes, chronic pain, as well as

13

> depression and anxiety. Several of these systems failures are of sufficient severity to warrant to meeting [sic] the Social Security Listings." …. Dr. Siegel described the claimant's primary impairments as kyphoscoliosis of the lumbar and thoracic spine, right hip arthrodesis with weakness in abduction and flexion. Dr. Siegel concluded that the claimant cannot lift more than five pounds (and that "less than one hour total" per day). Due to antalgic gait and right hip weakness and scoliosis, the claimant can walk and stand less than two hours per eight-hour day. She can sit only two hours in an eight-hour workday. She can never balance, climb, stoop, crouch, kneel, or crawl. The claimant's capacity to see, reach, handle, finger, feel, push, and pull is affected (but Dr. Siegel did not specify how or to what extent). The claimant would likely miss more than four days per month if working according to Dr. Siegel. She is unable to lean or twist. She is unable to maintain neck flexion. She should avoid vibration, heights, moving machinery, chemicals, and temperature extremes (Exhibit 28F).

(Tr. 25 (footnote omitted)).

The ALJ next explained the lack of consistency and supportability exhibited by Dr. Sigel's opinions:

> [T]he extensive degree of functional limitation described by Dr. Siegel which, if plausible, would render the claimant completely unable to function effectively is unsubstantiated by objective medical evidence and clinical findings and is not persuasive. Firstly, Dr. Siegel's contention that the claimant's musculoskeletal impairments are of Listing-level severity is unwarranted. There is no evidence to show that the claimant requires an ambulatory aid or that she is rendered immobile to the extent anticipated for Listing-level severity. Secondly, Dr. Siegel provided no evidence to support his assertions that the claimant can never balance, climb, stoop, crouch, kneel, or crawl. Similarly, his conclusion that the claimant can sit only two hours in an eight-hour workday is without foundation in the medical record. He noted that the claimant's capacity to see, reach, handle, finger, feel, push, and pull is affected, but he did not indicate how or to what extent. His conclusion that the claimant would likely miss more than four days per month if working is entirely speculative and without any logical foundation in the medical record. He indicated that the claimant is unable to lean or twist, that she is unable to maintain neck flexion, and that she should avoid vibration, chemicals, and temperature extremes but he provided no rationale for such limitations (nor is any logical foundation for such limitations apparent in the medical record). For these reasons, the opinion evidence of Dr. Siegel is not persuasive. The only aspect of Dr. Siegel's assessment that is somewhat persuasive is his contention that the claimant should avoid heights and moving machinery which is plausible and consistent with the nature and severity of the claimant's existing impairments (and which is also consistent with the assessments of Dr. Siddiqui and Dr. Sreenivas).

14

(Tr. 27).

On the whole, Plaintiff does not cite to any particular pages in the administrative record that the ALJ may have missed. In her reply memorandum, Plaintiff primarily urges this Court to re-examine the "persuasiveness" of Dr. Siegel's opinions, using her own analysis of the relevant factors. But this Court cannot reweigh the evidence where, as here, the ALJ's analysis falls within a reasonable "zone of choice."  Plaintiff also reiterates her argument that the regulations "favor Dr. Siegel as an examining physician over the non-examining state agency record reviewers." (Doc. 11 at 2). However, current regulations eliminate the former presumptive hierarchy and do not require an ALJ to favor the opinions of a one-time examining physician over those of non-examining consultants. In short, the ALJ's analysis of the supportability and consistency factors is adequately explained, and his evaluation of Dr. Siegel's opinions is substantially supported.

### 3.  The Determination that Plaintiff Could Maintain Fulltime Work

Plaintiff's final claim is that the ALJ should have considered the possibility that she would be unable to sustain full-time work due to the historic frequency of her medical appointments and/or days on which she would experience severe pain. In support of this argument, Plaintiff includes a chart in her brief before this Court (without any citation to where – if anywhere – the chart appears in the administrative record) that allegedly documents the number of days each month in which Plaintiff had previously scheduled medical appointments. According to the chart, "in approximately half of the months…Plaintiff attended more than one medical appointment." (Doc. 9 at 12).

Plaintiff implies that Dr. Siegel's opinion that Plaintiff would miss more than four days of work per month is consistent with the chart. But the Court finds no error in the ALJ's rejection of Dr. Siegel's absenteeism opinion as "entirely speculative." (Tr. 27).

15

There is no evidence that a copy of the chart actually was considered by Dr. Siegel.[8] And for the reasons previously discussed, the ALJ's analysis of Dr. Siegel's opinions as lacking in support and consistency is well supported. *See also McGrew v. Berryhill*, Case No. 3:16-cv-220, 2017 WL 4324765 at *8 (S.D. Ohio Sept. 29, 2017).

Nevertheless, Plaintiff contends that the ALJ wrongly assumed that her employer would accommodate the frequency of her appointments. Plaintiff notes that the VE testified that absenteeism typically is tolerated at a level of "no more than one unscheduled absence a month." (Tr. 69).[9]

Again, the Court finds no error. Through Step 4 of the sequential analysis, it remained Plaintiff's burden to prove that she could no longer perform her past work based upon her functional limitations. See 20 C.F.R. § 404.1512(c). Plaintiff provides no record citation that demonstrates that the same "chart" or any other definitive evidence was submitted into the record regarding her alleged rate of absenteeism. Even assuming that the "chart" was before the ALJ, Plaintiff provides no evidence that her appointments would cause full-day absences or could not be scheduled outside of work hours.

In conclusion, the RFC as determined by the ALJ is substantially supported. Because the hypothetical RFC formulated by the ALJ is supported by the record as a whole, the vocational expert's testimony that such an individual can engage in her prior relevant work as a bookkeeper constitutes substantial evidence to support the non-disability determination. *See Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987).

---

[8] Also undermining Plaintiff's argument, the chart lists many months in which Plaintiff had no scheduled appointments. In other words, the data in the chart does not appear to be consistent with Dr. Siegel's opinion.

[9] It is not clear that a scheduled doctor's appointment would be an "*unscheduled* absence,"

16

### III.  Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge
